WIGGINTON, Judge.
Plaintiff has appealed a final judgment dismissing with prejudice his amended complaint by which he seeks injunctive relief and damages caused by appellees’ alleged violation of the beverage laws of this state.
By his amended complaint appellant alleges that he is a licensed vendor of alcoholic beverages doing business in Ocala, Marion County, Florida, and that defendants are licensed wholesale distributors of alcoholic beverages doing business in the geographical area in which appellant is located. The complaint alleges that although appellees give cash discounts both to plaintiff and to other alcoholic beverage retail vendors with whom plaintiff competes in Marion County, the discounts allowed to some of plaintiff’s competitors exceed the cash discounts allowed appellant on purchases of similar quantities of beverages, which disparity in the amount of discounts allowed constitutes an arrangement for financial assistance by gift in violation of F.S. Section 561.42, F.S.A., commonly referred to as the Tied House Evil Law. The complaint elaborates on the gravamen of the action by further averring that the excessive cash discounts given by appellees to legal entities having more than one licensed retail outlet in Marion County or elsewhere in the State of Florida are computed on the basis of the total volume of each purchase made by such entities for their several retail outlets. The complaint alleges that discounts allowed by appellees to multiple retail outlet entities on the basis of the greater volume of beverages purchased by them in a single order for use of all of their retail locations are illegal and permit appellant’s competitors to under-price the beverages sold by him which is *817 having the effect of destroying his business and causing him irreparable injury.
The pertinent provisions of the Tied House Evil Law with which we are immediately concerned are as follows:
“(1) No licensed manufacturer, or distributor, of any of the beverages herein referred to shall have any financial interest, directly or indirectly, in the establishment or business of any vendor licensed under the beverage law, nor shall such licensed manufacturer or distributor assist any vendor by any gifts or loans of money or property of any description or by the giving of any rebates of any kind whatsover. * * *
* * * * * *
“(6) Nothing herein shall be taken to forbid the giving of trade discounts in the usual course of business upon wine and liquor sales.
“(7) The extension or receiving of credits in violation of this section shall be considered as an arrangement for financial assistance and shall constitute a violation of the beverage act and any maneuver, shift or device of any kind by which credit is extended contrary to the provisions of this section shall be considered a violation of the beverage act.
“(8) The director may establish rules and require reports to enforce the herein established limitation upon credits and other forms of assistance. Nothing herein shall be taken to affect the provisions for cash sales of wines or beer as are provided in § 562.21 or provisions of § 562.22 but shall govern all other sales of intoxicating liquors.” [1]
The purpose of the Tied House Evil Law is to prohibit manufacturers, wholesalers, and distributors of alcoholic beverages from controlling retail outlets operated by licensed vendors through the granting, withholding or extension of credit, the lending of money, investment in the business of the retailer, the making of rebates or the giving of any other financial assistance.[2] The purpose of the act is to protect not only the public interest but also the interest of retail vendors licensed under the provisions of the act.
It is clear from the explicit provisions of the act hereinabove quoted that the giving of trade discounts by wholesalers and distributors to retail vendors in the usual course of business is permitted and does not constitute a violation of the act. The beverage act defines the term “discounts in the usual course of business” to mean a cash discount given simultaneously at the time of sale; provided, however, the same discount shall be offered to all vendors buying similar quantities. The act further provides that any discount which is in violation of the statute shall be considered as an arrangement for financial assistance by a gift and therefore a violation of the Tied House Evil Law.[3]
It is appellant’s contention that in order for a discount given by a wholesaler or distributor to a retail vendor of alcoholic beverages to qualify as a discount in the usual course of business as permitted by the statute, it must be one that is allowed to all retail vendors alike who purchase similar quantities of beverages in a single order. It is appellant’s position that each licensed retail outlet must be considered as a separate retail vendor and trade discounts must be computed on and limited to the volume of beverages purchased for sale at and allocated to each individual location. Appellant urges that this construction of the statute must be adopted in order to insure fair competition between retail vendors even though several licensed retail outlets may be owned by a single licensed vendor who purchases in volume for all outlets owned and operated by it. Appellant reasons that when a single vendor is permitted *818 to make a volume purchase of beverages which is allocated among several retail locations operated by it, the greater volume discount allowed on such purchase permits each individual retail outlet to sell the beverages at a price substantially less than appellant is able to do when he purchases a lesser amount for the single retail outlet owned and operated by him. He concludes that such an arrangement for volume discounts creates unfair competition between a vendor owning only a single retail outlet and a vendor who owns and operates multiple retail outlets. Appellant charges that discounts allowed on such a basis constitute an arrangement by the wholesaler for financial assistance to the vendor in direct violation of the Tied House Evil Law.
Although the statute clearly authorizes the Department of Business Regulation to adopt rules setting the maximum amount of discount which a wholesaler or distributor will be permitted to give on a single purchase of alcoholic beverages by a retail vendor, no such rules have yet been promulgated or made effective to control his phase of the alcoholic beverage industry in Florida. The only criterion for measuring the amount of discount which may be allowed by a wholesaler or distributor is that defined by the statute as one given “in the usual course of business”.[4] The only restriction on the granting of discounts to licensed vendors is that provided in Rule 7A-4.31 adopted by the Department of Business Regulation, which provides that accrued, accumulative or retroactive discounts are prohibited and any discount may be given only on alcoholic beverages purchased in a single transaction. The Department, by its Rule 7A-1.111, has defined a single transaction to mean any singular order given on any day and shall not be construed to mean accumulated orders on a day-to-day basis. Rule 7A-3.01 adopted by the Department specifically authorizes a chain of vendor’s places owned by one person, firm or corporation to have a central storage warehouse without such person, firm or corporation being classed as a distributor. This regulation implies that a vendor having more than one retail outlet location may buy alcoholic beverages in quantity and store the purchase in a warehouse owned by it, from which the amount so purchased may be allocated and distributed among the retail outlets operated by it. We find nothing in the statutes nor in the rules adopted by the Department which prohibit a wholesaler or distributor from delivering parts of a single order to two or more different licensed locations owned by the vendor by whom the purchase was made.
In view of the foregoing, any single purchase made by a multiple location vendor may be subject to such proper discount in the course of business as may be allowed by the distributor or wholesaler even though the amount purchased is warehoused by the vendor and later allocated among its several retail outlets, or delivered by the wholesaler to different retail outlets operated by the vendor. We find nothing in the statute or in the rules of the Department which requires that quantity discounts allowed by wholesalers be calculated on the basis of the amount of each purchase delivered or allocated to individual retail outlets or locations. While the position taken by appellant with respect to the manner in which discounts should be computed may have merit and should be the subject of regulation by rule of the Division of Beverages, we find nothing in the law which requires that it be done in accordance with the method espoused by him.
In the absence of valid rules adopted by the Division of Beverages governing the maximum amount of discounts which a wholesaler or distributor may allow retail vendors on their purchase of alcoholic beverages, vendors engaged in the industry are confined to the provisions of the statute dealing with this subject in determining whether they have a cause of action for violation by wholesalers of the Tied House Evil Law. A volume discount *819 allowed by a wholesaler or distributor to a retail vendor is not made “in the usual course of business” if it bears no reasonable relationship to the savings in cost accruing to the wholesaler or distributor in the manufacture, sale or delivery of the product sold. If the amount of the discount is contrary to the conditions imposed by the statute or to the usual practice in the industry and in reality is but a subterfuge for granting financial assistance to a favored vendor, such discount would constitute a violation of the Tied House Evil Law. If a licensed vendor could show that discounts allowed his competitors under any of the circumstances hereinabove mentioned had the effect of destroying his business and causing him irreparable injury, he might be entitled to the relief sought by the complaint filed in this case. The complaint herein, however, contains no such allegations and under the present state of the law and regulations of the department, we are of the view that no cause of action has been properly alleged.
The judgment appealed is accordingly affirmed.
SPECTOR, C. J., and CARROLL, DONALD K., J., concur.

. F.S. § 561.42(1), (6), (7), (8), F.S.A.

. Pickerill v. Schott (Fla.1951) 55 So.2d 716; 2 Fla.Jur. 61, Alcoholic Beverages, § 8.

.F.S. § 561.01(13), F.S.A.

. F.S. § 561.01(13), F.S.A.