CASTLEWOOD INTERNATIONAL CORPORATION, a Florida Corporation, Plaintiff,

v.

William SIMON, as Secretary of the Treasury of the United States, et al., Defendants.

No. 74–1633–Civ–JLK.

United States District Court,
S. D. Florida,
Miami Division.

Nov. 18, 1975.

---

Tobias Simon and Elizabeth duFresne, P. A., Miami, Fla., for plaintiff.

Patricia Jean Kyle, Asst. U. S. Atty., Miami, Fla., for defendants.

## SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

This cause came before the court as plaintiff's action for injunctive relief and declaratory judgment seeking to declare void and to enjoin the enforcement of rulings issued under the Federal Alcohol Administration Act by the United States Bureau of Alcohol, Tobacco and Firearms. The court, having considered the record and being fully advised in the premises, finds and concludes that plaintiff's claim should be denied and summary judgment be entered in favor of the defendants.

Plaintiff and defendants stipulated at oral argument, that there were no genuine issues of material fact to be resolved. All issues of law to be resolved by the court as a matter of law were argued by the parties. The court has considered all of the arguments and wishes to address itself to plaintiff's contentions that certain rulings of the Bureau of Alcohol, Tobacco and Firearms (hereinafter, the Bureau of ATF), conflicted with Florida state statutory schemes, and thus were in violation of the Twenty-First Amendment, and that in promulgating such rulings, the Bureau of ATF acted beyond the scope of its statutory jurisdiction and authority.

The court has jurisdiction pursuant to the plaintiff's good faith allegations predicated upon 28 U.S.C. § 1331 and issues arising under 27 U.S.C. § 205, 5 U.S.C. § 701, and the Twenty-First Amendment to the United States Constitution.

Section 205 of the Federal Alcohol Administration Act, (hereinafter the FAA Act), 27 U.S.C. § 205, is directed to wholesalers of alcoholic beverages and it established certain trade practice violations. § 205(b) is the so called "Tied house evil" law and it prohibits, among other things, wholesalers from inducing retailers to purchase products from them:

by furnishing, giving, renting, lending, or selling to the retailer, any equipment, fixtures, signs, supplies, money services, or other thing of value, subject to such exceptions as the Secretary of the Treasury shall by regulation prescribe, having due regard for public health.

In 1954, the Bureau of ATF issued Revenue Ruling 54–161, which established guidelines as to acts which would constitute a violation of § 205(b). The final sentence of the ATF Ruling specified:

However, if the amount of the product given free with the order is such that the pricing aspect is merely a subterfuge, the transaction would constitute a gift within the meaning of this section of the Federal Alcohol Administration Act.

In Feburary of 1974, the Bureau of ATF issued Industry Circular 74–2, which notified the regulated wholesale industry of a forthcoming ATF Ruling, and provided background and purpose information regarding the forthcoming Ruling. The circular was regarded by the Bureau of ATF as amplification and clarification of Revenue Ruling 54–161 and stated in part:

In considering whether a discount is in fact a method for arriving at an agreed price and not a subterfuge, the Bureau holds there must be a reason-

able relationship between the discount and the purpose for which it is granted, i. e., a discount given in connection with a volume purchase must bear a reasonable relationship to the savings in cost accruing to the supplier in the manufacture, sale, or delivery of the product.

Industry Circular 74–2 was subsequently adopted as ATF Ruling 74–6. It is this Ruling that plaintiff says, conflicts with, and must bow to, state regulation.

The question of whether a conflict exists between federal and Florida state law rests upon the specific facts before the court. In the instant case plaintiff is relying primarily upon Florida state law, particularly Florida Statutes §§ 561–568, which provide for regulation of the beverage industry within the State of Florida. Section 561.01(10) of Title XXXII of the Florida Code defines the terms "discount in the usual course of business" to mean "a cash discount given simultaneously at the time of sale. The same discounts shall be offered to all vendors buying similar quantities. Any discount which is in violation of this section shall be considered an arrangement for financial assistance by gift." Section 561.42(1) provides that no licensed distributor shall, "assist any vendor by any gifts or loans of money or property of any description or by the giving of any rebates of any kind whatsoever. No licensed vendor shall accept, directly or indirectly, any gift or loan of money or property of any description or any rebates from any . . . licensed manufacturer or distributor; . . ." Section 561.42(6) provides that nothing in section 561.42 "shall be taken to forbid the giving of trade discounts in the usual course of business upon wine and liquor sales." Plaintiff also relies upon Attorney General Opinion 073–196, State of Florida, 1973, wherein the Attorney General of Florida said:

The size of the discount is no longer a factor. So long as it is a cash discount given simultaneously at the time of sale and so long as the same dis-

count is offered to all vendors buying similar quantities, it is a "discount in the usual course of business" and thus exempted from Section 561.42 by Subsection (6). Under the amended Section it is a violation of "this section" rather than a rule which is considered an arrangement for financial assistance of gift. This change reflected an apparent legislative recognition that major discounts result in lower prices to the consumer, as well as a desire by the Legislature to require equality in the treatment of retailers, as an alternative to price fixing by the Division.

After examination of Florida statutory and case law, the court feels that the State of Florida has spoken. In the case of *Musleh v. Fulton Distributing Company of Florida*, 254 So.2d 815, 818, 819 (1st DCA 1971) the Court of Appeals held that "a volume discount allowed by a wholesaler or distributor to a retail vendor is not made 'in the usual course of business' if it bears no reasonable relationship to the savings in cost accruing to the wholesaler or distributor in the manufacture, sale or delivery of the product sold." It is clear that this language is not in conflict with that contained in ATF Industry Circular 74–2, ATF Ruling 74–6.

■ The court does not question plaintiff's allegations that the ATF rulings have had a cause and effect result and wholesalers have increased prices. However, the court finds no clear and direct conflict between Florida law and the ATF rulings at issue. In *Joseph E. Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 45, 86 S.Ct. 1254, 1261, 16 L.Ed. 2d 336 (1966) the Supreme Court said:

In this as in other areas of coincident federal and state regulations, the "teachings of this Court's decisions . . . enjoin[s] seeking out conflicts where none clearly exists." *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 446 [80 S.Ct. 813, 817, 4 L.Ed.2d 852], (1960).

This court has alternatively considered the conflict allegations in the case at bar and holds that even if a conflict were found to exist, the federal rulings must prevail.

The Eighteenth Amendment to the Constitution of the United States prohibited the manufacture, sale, or transportation of intoxicating liquors within, into or from the United States and all its territories. Prior to the passage of the Eighteenth Amendment, the regulation of liquor traffic was a matter solely of local concern except as circumscribed by the Commerce Clause of the Constitution. *Washington Brewers Institute v. United States*, 137 F.2d 964 (9th Cir. 1943), *cert. denied*, 320 U.S. 776, 64 S.Ct. 89, 88 L.Ed. 465 (1943), citing: *The License Cases*, 5 How. 504 46 U.S. 504, 12 L.Ed. 256 (1847); *Bowman v. Chicago & N. W. R. Co.*, 125 U.S. 465, 8 S.Ct. 689, 31 L.Ed. 700 (1887), and *Leisy v. Hardin*, 135 U.S. 100, 10 S.Ct. 681, 34 L.Ed. 128 (1889).

■■ The Twenty-First Amendment was ratified in 1933 and, in addition to repealing the Eighteenth Amendment, provided in Section 2 that:

The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

The United States Supreme Court has consistently held,

"That Amendment bestowed upon the states broad regulatory power over the liquor traffic within their territories." *United States v. Frankfort Distilleries*, 324 U.S. 293, 299 [65 S. Ct. 661, 664, 89 L.Ed. 951.], cf. *Nippert v. City of Richmond*, 327 U.S. 416, 425, n. 15, 66 S.Ct. 586, 590, 90 L.Ed. 760. Just two Terms ago we took occasion to reinterate that "a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or con-

sumption within its borders." . . ., however, the second section of the Twenty-first Amendment has not operated totally to repeal the Commerce Clause in the area of the regulation of traffic in liquor. 384 U.S. at 42, 86 S.Ct. at 1259.

It is clear to this court that where activities in intrastate commerce substantially affect interstate commerce, Congress has the power to regulate such intrastate activities. *McCulloch v. Maryland,* 4 Wheat. 316, 4 L.Ed. 579 (1819); *United States v. Ferger,* 250 U.S. 199, 39 S.Ct. 447, 63 L.Ed. 941 (1919); *United States v. Darby,* 312 U.S. 100, 61 S. Ct. 451, 85 L.Ed. 609 (1940); *Currin v. Wallace,* 306 U.S. 1, 59 S.Ct. 379, 83 L. Ed. 441 (1939).

"Both the Twenty-First Amendment and the Commerce Clause are parts of the same Constitution. Like other provisions of the Constitution, each must be considered in the light of the other, and in the context of the issues and interests at stake in any concrete case." *Hostetter v. Idlewild Liquor Corp.,* 377 U.S. 324, 332, 84 S.Ct. 1293, 1298, 12 L. Ed.2d 350 (1963). The court finds nothing in the Twenty-First Amendment which purports to restrict the power of Congress over commerce in intoxicating liquors when such commerce is carried on without violation of state laws, nor does the amendment deny to Congress the power to legislate in aid of state prohibitions. "the ability on the part of the states to restrict liquor traffic in no way deprives the federal government of concurrent jurisdiction. Beyond a doubt the states have been given broad surveillance over liquor business within their boundaries, but it is equally certain that their jurisdiction is not plenary and exclusive." *Hanf v. United States,* 235 F. 2d 710, 718 (8th Cir. 1956), *cert. denied,* 352 U.S. 880, 77 S.Ct. 102, 1 L.Ed.2d 81 (1956). *See also: United States v. Frankfort Distilleries,* 324 U.S. 293, 299, 65 S.Ct. 661, 89 L.Ed. 951 (1944); *Arrow Distilleries v. Alexander,* 109 F.2d 397 (7th Cir. 1940), *cert. denied,* 310

U.S. 646, 60 S.Ct. 1095, 84 L.Ed. 1412 (1940); *Washington Brewers Institute v. United States,* 137 F.2d 964 (9th Cir. 1943), *cert. denied,* 320 U.S. 776, 64 S. Ct. 89, 88 L.Ed. 465 (1943); *Duckworth v. State of Arkansas,* 314 U.S. 390, 62 S. Ct. 311, 86 L.Ed. 294 (1940).

Plaintiff asserts that because of Section 2, of the Twenty-First Amendment, the states have been given paramount authority to regulate the use and delivery of intoxicating liquors within the states' own borders and that should federal and state regulations in this area conflict, the state regulation must prevail. This contention, though bold and novel, cannot be accepted. In *Seagram, supra,* 384 U.S. at p. 42, 43, 86 S.Ct. at p. 1259, 1260, the court said:

. . . the present case concerns liquor destined for use, distribution or consumption in the State of New York. In that situation, the Twenty-First Amendment demands wide latitude for regulation by the State. We need not now decide whether the mode of liquor regulation chosen by a State in such circumstances could ever constitute so grave an interference with a company's operations elsewhere as to make the regulation invalid under the Commerce Clause.

Thus the Supreme Court, in one sentence both delineated the broad latitude to be given to the states and made clear that in an appropriate case, state regulation must bow to the Commerce Clause. Such language is clearly fatal to a state pre-emption argument, or an argument that given a conflict, state regulation must prevail over federal regulation.

The court finds there is no merit in plaintiff's argument that the Bureau of ATF acted beyond the scope of its jurisdiction and statutory authority. The court has determined that defendants in this case have specific authority to issue rulings and advisory opinions interpreting the FAA Act within general powers granted under 26 C.F.R. § 601.328. Additionally, rulings and advisory opin-

ions are expressly warranted within 27 U.S.C. § 205(b) for the purpose of informing the regulated industry of ATF interpretations of the FAA Act.

■■ In the present case, the court may review administrative decisions to determine whether agency action was arbitrary and capricious. *Gibson Wine Co. v. Snyder*, 90 U.S.App.D.C. 135, 194 F.2d 329 (1952); *Continental Distilling Corp. v. Humphrey*, 101 U.S.App.D.C. 210, 220 F.2d 367 (1954). After full and careful review, the court finds that the actions taken by the Bureau of ATF were neither arbitrary nor capricious and were within that agency's jurisdiction and authority. Under the circumstances in the present case, to decide otherwise would be to proscribe the agency's power to investigate and enforce its own regulations. The placing of such limitations is clearly not within the intent of Congress when it enacted the FAA Act. See, *Legislative History of Federal Alcohol Administration Act*, H.R. 8870, p. 18; *Treasury Department Order* No. 221, 37 F.R. 11696, 26 C.F.R. § 601.328; *Report of the Attorney General's Committee on Administrative Procedure* (1941), p. 99.

Therefore, after due consideration of the complete record in the present case, it is

Ordered and adjudged that defendants' motion for summary judgment be and the same is hereby granted.